UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE CULBERSON,

                     Plaintiff,                                      Case No. 12-11483

v.                                                   Paul D. Borman
                                                   United States District Judge

MICHIGAN DEPARTMENT
OF CORRECTIONS,

                     Defendant.

_____/

OPINION AND ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. No. 22)

This action arises from Plaintiff's allegations that his termination was improperly based, in part, on time he took off to care for his wife after her dental surgery. The case was removed to this Court on April 3, 2012, from Jackson County Circuit Court. (Dkt. No. 1).

Now before the Court is Defendant Michigan Department of Corrections' ("Defendant" or "MDOC") Motion for Summary Judgment which was filed on February 13, 2014. (Dkt. No. 22). Plaintiff responded on April 2, 2014, pursuant to a stipulated order extending the date in which Plaintiff could respond. (Dkt. Nos. 25, 26). Thereafter, Defendant filed a reply. (Dkt. No. 27). A hearing on this matter was held on June 13, 2014.

## I. BACKGROUND

A.     Plaintiff's Employment with MDOC

Plaintiff was hired by the Defendant as a corrections officer in 1985. In 1987, Plaintiff was promoted to a Resident Unit Officer ("RUO"). During Plaintiff's career with Defendant, he worked at multiple different facilities in Michigan including Jackson, Ionia, and St. Louis until

his discharge from the Parnall Correctional Facility in Jackson, Michigan on March 23, 2010. (Def.'s Br., Ex. 1, Pl.'s Dep. at 108-12).[1]  In settlement of a grievance filed by Plaintiff, Plaintiff's employment was reinstated but conditioned upon his retirement by January 1, 2011. (*Id.* at 122; Ex. 15, Last Chance Agreement).  Accordingly, Plaintiff retired in December, 2010. (*Id.*).

B.      Plaintiff's Attendance and Sick Leave Time Issues 2003-2007

From August 2003 until August 2007, Plaintiff received twelve written counseling memorandums for issues relating to attendance and sick leave.  (Ex. 19).  Many of these counseling memoranda refer to multiple occasions when Plaintiff failed to report to work in a timely manner.[2]  Plaintiff was also counseled on the fact that he "continuously liquidated" his sick leave and used his sick leave in conjunction with his regular days off in violation of MDOC policy.  (*See* Ex. 19 at 2, 4, 10, 11, 12).

C.      Plaintiff's Insubordination and Inattention to Duty in 2008

In March 2008, Plaintiff was observed reading a newspaper while propping his feet up on a desk during his regular shift by his shift supervisor.  (Ex. 2).  Plaintiff's supervisor claimed that Plaintiff put the newspaper away when Plaintiff saw the supervisor approach, but kept his feet up on the desk.  (Ex. 2 at 1).  Plaintiff testified that he was not reading a newspaper but that he did have his feet on the desk.  (Pl.'s Dep. at 50).  Plaintiff also testified that his supervisor never

---

[1] Unless otherwise noted, all references to exhibits shall refer to exhibits attached to the Defendant's brief for summary judgment.

[2] For example, the 8/26/03 counseling memorandum notes that Plaintiff was tardy eleven different times from 7/21/03 through 8/16/03.  (Ex. 19, at 1).  A counseling memorandum from 1/9/04 states that Plaintiff was tardy thirteen different times during the time period of 8/17/03 through 1/7/04.  (Ex. 19, at 3).

ordered him to remove his feet but actually asked him to do so, therefore, Plaintiff concluded

that he was never ordered to remove his feet.  (Pl.'s Dep. at 52-53).  A disciplinary conference

was held on April 29, 2008 during which Plaintiff was found to have been inattentive to duty and

to have committed insubordination. (Ex. 2 at 3-4).  Plaintiff and was issued a three-day

suspension.  (*Id.* at 4).  Plaintiff testified that eventually the three-day suspension was reduced to

a one-day suspension.  (Pl.'s Dep. at 53; Ex. 13, at 11, Prior Discipline Record).

D.      Plaintiff's Attendance and Sick Leave Time Issues in 2008-2009

On September 26, 2008, Plaintiff was issued a formal counseling memorandum on the

issue of time and attendance.  (Ex. 3).  In the memorandum, Plaintiff was advised that

"continuously liquidating your sick leave, and/or being late for roll call or shift will result in

further corrective action being taken, up to and including dismissal."  (Ex. 3 at 1).  The

memorandum also informed Plaintiff that he was "required to provide medical documentation of

your illness/absence.  Regardless if you are asked to provide documentation or not, by order of

this memo, for the next 90 days you will be required to provide medical documentation

whenever you utilize sick leave."  (*Id.*).

On December 18, 2008, Plaintiff received another written counseling for time and

attendance issues that noted Plaintiff had been verbally counseled on the same matter on

November 19, 2008 when he was late for roll call.  (Ex. 4 at 1).  The memorandum also noted

that he was late again on November 25, December 5, December 10 and then again on December

17, 2008.  (*Id.*).

On December 25, 2008, Plaintiff received yet another formal written counseling

memorandum that noted Plaintiff was tardy for roll call on December 24, 2008 despite his

3

previous counseling on December 18, 2008. (Ex. 5). The December 25, 2008 memorandum also advised Plaintiff that "[b]y notice of this second written counseling, you are notified that any future tardy occurrences will result in further disciplinary action." (Ex. 5 at 1).

On or about January 28, 2009, Plaintiff was placed on an "interim rating" after being tardy on January 9 and 10, 2009 following the two formal counseling memoranda in December 2008. (Ex. 6 at 1). The interim rating called for Plaintiff's attendance to be closely monitored for 90 days.[3] (*Id*.). Plaintiff admitted that he was late repeatedly and was informed that his time and attendance problems would be closely monitored by Defendant. (Pl.'s Dep. at 62-65).

In February 2009, Plaintiff was formally counseled again for being tardy to roll call and for incurring "lost time", in which he did not have adequate paid leave to cover his absence. (Ex. 7, at 1; Ex. 17, Warner Aff. at ¶ 5). On February 25, 2009, Plaintiff was issued another formal written counseling memorandum which stated that he had incurred lost time again on February 20, 2009 when he took the day off and had insufficient annual leave credits to cover the hours. (Ex. 8).

On May 4, 2009, Plaintiff received a follow-up interim rating that evaluated his performance as "unsatisfactory". (Ex. 9 at 2). The follow-up interim rating also noted that he had called in sick twice in March and once in April, and each time he failed to submit the required medical documentation. (*Id*. at 1-2).

In July, 2009, Plaintiff was issued a satisfactory second follow-up interim rating for the time period of April 18, 2009 through July 18, 2009. (Ex. 10). This second follow-up rating

---

[3] An interim rating is "a form of discipline used to identify and correct performance and attendance issues." (Ex. 17, Warner Aff. at ¶ 5).

4

also noted that he was tardy on May 16 and May 30, 2009.  (Ex. 10).

On or about September 21, 2009, Plaintiff was placed on a second interim rating.  (Ex. 11 at 1).  The second interim rating noted that Plaintiff had utilized sick leave in conjunction with his regular days off and without providing any medical documentation in violation of policy. (Ex. 11 at 1; *see also* Ex. 20, Employee Handbook, at 2).  Plaintiff had also been tardy again for roll call on August 4, 2009 and had allowed his sick leave bank to fall below the requisite 16 hours.  (Ex. 11 at 1).  Plaintiff was advised that any further absences must be supported by a doctor's note.  (Ex. 11 at 1).  The discipline report related to the second interim rating stated that it constituted the fourth discipline in Plaintiff's record and that he needed to show improvement and "achieve satisfactory status" as "further discipline/unsat [sic] rating will subject [employee] to more sever[e] sanction, including discharge."  (Ex. 11 at 2).

E.      Plaintiff's Discharge

On January 8, 2010, Plaintiff was observed during his regular shift with his feet up on a desk (again) and with his head tilted back and his eyes closed.  (Ex. 12).  This action violated Defendant's policy on "attention to duty."  (*Id*.).   The issue was assigned the disciplinary packet number of DS-2-51-0038-10.  (*Id*.).  A disciplinary hearing on the offense was held on March 8, 2010.  (*Id*. at 5).  At that hearing, Plaintiff disputed the facts of the charge, stating that he had one foot on the heat register due to being cold and his arms were behind his head.  (Ex. 12 at 5). He further stated that his eyes were not closed and he was not sleeping.  (*Id*.).  However, the violation of "attention to duty" was upheld at the disciplinary conference because Plaintiff admitted his leg was up, his hands were behind his head and he was looking out a window.  (*Id*. at 6).  A three-day suspension was recommended by the warden.  (*Id*.).  Plaintiff served the

recommended three-day suspension before the report was reviewed by Defendant's Discipline Coordinator, Kathy Warner, on March 23, 2010. (*Id*. at 1; Pl.'s Br. Ex. 7, suspension served on March 17-20, 2010). On or about March 1, 2010, Plaintiff received a follow-up interim rating of "unsatisfactory." (Ex. 13). That rating was assigned disciplinary packet number DS-2-51-0041-10. (*Id*. at 2). The follow-up rating noted Plaintiff's use of sick leave on October 24, 2009, December 17, 2009 and February 12, 2010.[4] (*Id*. at 1). The rating also stated that Plaintiff had been late on seven different occasions from December 2009 through February, 2010. (*Id*.). Additionally, the follow-up interim rating noted that Plaintiff had incurred lost time on two different occasion in January 2010. (*Id*.). A disciplinary hearing was held on this issue on March 11, 2010. During that hearing, Plaintiff argued that the sick leave he took on December 17, 2009 related to his wife's December 16, 2009 surgery and produced a doctor's note. (Ex. 13 at 5-6). While other dates that Plaintiff produced documentation for were excluded from the rating, the December 17, 2009 date was determined to be part of his rating because the excuse slip provided by Plaintiff stated his wife's surgery was on December 16, 2009 not December 17, 2009.[5] (*Id*. at 6). At the conclusion of the disciplinary hearing it was noted that this was Plaintiff's sixth discipline since March 2008 and his third interim rating since January 2009. (Ex. 13 at 6). The warden recommended separation. (*Id*.).

---

[4] The March 11, 2010, disciplinary hearing memorandum noted that Plaintiff also used sick leave on September 26, 2009, January 7, 2010 January 12, 2010 and February 11, 2010. Those dates were not made part of his record because one absence was approved by a superior and Plaintiff provided proper documentation regarding the others. (Ex. 13 at 5).

[5] "The date of December 17, 2009 which RUO Culberson claimed was the date of his wife's surgery will be made part of the rating. RUO Culberson provided an excuse slip from a Dr. Gordon dated March 10, 2010 for an appointment on December 16, 2009 at 2:30 p.m. It is apparent that RUO Culberson was less than forthright regarding December 17th." (Ex. 13 at 6).

Kathy Warner is employed by Defendant as its statewide Discipline Coordinator. (Warner Aff. at ¶ 2). Warner reviews "disciplinary packets received from institutions throughout the state to determine whether there is sufficient evidence to support a finding that an employee has committed a rule infraction." (*Id*.). Warner attested that she reviewed the disciplinary packet for Plaintiff's attention to duty policy violation on March 23, 2010 (DS-2-51-0038-10). (*Id*. at ¶ 4). She also reviewed Plaintiff's unsatisfactory interim rating follow-up on the same day (DS-2-51-0041-10). (*Id*. at ¶ 5). Warner attested that she determined that discharge was an appropriate sanction for Plaintiff's violation of the attention to duty policy. (*Id*. at ¶ 4). Warner then modified the warden's recommended three-day suspension to a discharge. (Ex. 12 at 1). Warner attested that discharge was also warranted based on Plaintiff's unsatisfactory interim follow-up rating and his prior disciplinary history. (*Id*. at ¶ 5). Warner explained: "[a]t the time I made the decision to discharge based upon the two (2) separate March 23, 2010 disciplines, I informed MDOC that while I had combined them when I signed off on the discharge decision, I would have discharged for either standing on its own as well." (*Id*. at ¶6; Ex. 14, 3/23/10 email, stating same).

After being discharged, Plaintiff filed a grievance. (Pl.'s Dep. at 122). In settlement of that grievance Plaintiff agreed to a "Last Chance Agreement". (Ex. 15). Pursuant to the terms of the Last Chance Agreement, Plaintiff's employment was reinstated but conditioned on the fact that he retire no later than January 1, 2011. (*Id*.). The Last Chance Agreement stated that "[t]his settlement constitutes full and complete resolution of this grievance and all complaints and demands relative to this issue against the employer and its agents." (Ex. 15 at 2). Accordingly, Plaintiff retired in December 2010.

7

F.      Plaintiff's December 17, 2009 Absence

Plaintiff only disputes his December 17, 2009 absence.  On December 16, 2009,

Plaintiff's wife, Marcelene Culberson, had oral surgery to address a failing root canal.  (Ex. 18,

Gordon Dep. at 4; Pl.'s Resp., Ex. 12, M. Culberson Aff. at ¶¶ 2-3).  The surgery was performed

by Franklin Gordon, an endontist and periodontist.  (Gordon Dep. at 4).  The failing root canal

was addressed surgically by removal of an infected mass and the placement of a filling at the end

of the root.  (*Id*. at 5:3-4).  The mass was later biopsied and found to be a cyst.  (*Id*.).  Dr. Gordon

prescribed Plaintiff's wife Darvocet for pain and she was instructed to take one or two pills every

four hours as needed for pain.  (*Id*. at 6).

Marcelene Culberson stated that because of the great pain she felt she started taking

Darvocet during the evening of December 16, 2009 and continued taking it as needed through

December 19, 2009.  (M. Culberson Aff. at ¶ 6).  Mrs. Culberson also stated that on December

17, 2009, she was bedridden because of the pain associated with her dental surgery and needed

her husband to care for her.  (*Id*. at ¶ 7).  Additionally, Mrs. Culberson stated that while she was

not bedridden, she continued to take one or two Darvocet pills every four hours and was unable

to complete her normal household tasks because of pain and the effects of the medication

through at least December 19, 2009.  (*Id*. at ¶ 8).

## II. STANDARD OF REVIEW

Defendant has moved for summary judgment under Rule 56(c) of the Federal Rules of

Civil Procedure.  This rule provides that summary judgment "should be rendered if the

pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of genuine issue of material fact." *Id*. at 323; *see also Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case,

9

and on which that party will bear the burden of proof at trial" will mandate the entry of summary

judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere

allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in

Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial.

FED. R. CIV. P. 56(e). The rule requires that non-moving party to introduce "evidence of

evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd.*

*of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-

moving party must produce more than a scintilla of evidence to survive summary judgment).

### III. ANALYSIS

Plaintiff concurred with Defendant in the dismissal in Count II (violation of a collective

bargaining agreement), Count III (Spoilation of evidence), and Count IV (violation of the Elliot-

Larsen Civil Rights Act) of his Complaint. (Pl.'s Resp. at 1). Therefore, the Court does not

address those counts and only addresses Count I, the alleged violations of the Family Medical

Leave Act.

The Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq*, ("FMLA") entitles

eligible employees to up to 12 weeks of leave per year for certain reasons, "including 'a serious

health condition that makes the employee unable to perform the functions' of his or her

position." *Tillman v. Ohio Bell Tele. Co.*, 545 F. App'x 340, 348 (6th Cir. 2013) (quoting 29

U.S.C. § 2612(a)(1)(D)). It is unlawful for an employer to interfere with the rights provided to

employees pursuant to the FMLA or retaliate against employees for exercising those same rights.

29 U.S.C. § 2615(a). "Upon returning from FMLA leave, an employee must be reinstated to his

position or an equivalent position in terms of pay, benefits, and other conditions of

employment." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 281 (6th Cir. 2012) (citing 28

U.S.C. § 2614(a)(1)).

The United States Court of Appeals for the Sixth Circuit recognizes two separate theories for recovery under the FMLA: "(1) the 'entitlement' or 'interference' theory arising under 29 U.S.C. § 2615(a)(1), and (2) the 'retaliation' or 'discrimination' theory arising under 29 U.S.C. § 2615(a)(2)." *Id.* (citing *Seeger*, 681 F.3d at 282). "The FMLA also provides the Secretary of Labor notice and comment rule-making authority and directs the Secretary to issue regulations 'necessary to carry out' the Act." *Hoge v. Honda of Amer. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004) (quoting 29 U.S.C. § 2654). Plaintiff alleges violations of the FMLA based on both entitlement and retaliation theories in his complaint.

A.     FMLA Entitlement Claim

"Employees invoking the entitlement theory must prove that their employer interfered with or denied them an FMLA benefit to which they were entitled. This inquiry is an objective one divorced from the employer's motives, with the central question being simply whether the employee was entitled to the FMLA benefits at issue." *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 511 (6th Cir. 2006). To establish a *prima facie* case of FMLA entitlement, Plaintiff must show:

> (1) she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; (5) the employer denied the employee FMLA benefits to which she was entitled.

*Donald v. Sybra*, 667 F.3d 757, 761 (6th Cir. 2012) (quoting *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006)).

1.     Defendant had a Legitimate Reason for Discharge

Defendant contends that Plaintiff cannot evidence that he suffered any harm from Defendant's alleged denial of one day of FMLA leave time because he would have been

11

discharged regardless of whether or not he had stayed home to care for his wife on December 17, 2009.  Therefore, Defendant argues that Plaintiff cannot establish the fifth prong of a *prima facie* case, that he was denied FMLA benefits.

Defendant relies upon *Edgar*, in which the Sixth Circuit recognized that while an employer's intent is not a relevant part of the entitlement inquiry pursuant to § 2615, "[b]y the same token, the FMLA is not a strict-liability statute."  *Edgar*, 443 F.3d at 507 (citation omitted).  In *Edgar*, the Sixth Circuit explained: "Employees seeking relief under the entitlement theory must therefore establish that the employer's violation caused them harm.  Both the statute and the DOL regulation likewise establish that interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct."  *Id*. at 508 (citing *Arban v. West Publ'g Corp*., 345 F.3d 390, 401 (6th Cir. 2003)); *see also Grace v. USCAR*, 521 F.3d 655, 670 (6th Cir. 2008) (holding same).

While Defendant has styled its argument as one in which Plaintiff has suffered no harm because Defendant would have terminated him regardless due to an unrelated and legitimate reason, Defendant's argument is more properly considered under the familiar burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Indeed, the Sixth Circuit has explicitly held that the *McDonnell Douglas* framework applies to an entitlement claim pursuant to the FMLA.[6]  *Donald*, 667 F.3d at 762 (reasoning that "[t]he Court

---

[6] The Court notes that a recent unpublished and non-binding decision by the Sixth Circuit questions the reasoning in *Donald*.  *See Saulter v. Detroit Area Agency on Aging*, --- F. App'x ---, 2014 WL 1328330, at *18 n. 1 (6th Cir. Apr. 4, 2014) (noting, "Notwithstanding the fact that *Donald* is binding on this panel, *Donald* wrongly concluded, in our view, that the Sixth Circuit applies the *McDonnell Douglas* burden shifting framework to interference claims under the FMLA.")

effectively adopted the *McDonnell Douglas* tripartite test [in *Grace v. USCAR*] without saying as much."); *see also Jaszcyszyn v Advantage Health Physician Network*, 504 F. App'x 440, 447-48 (6th Cir. 2012) (restating same, but acknowledging that such application is limited only to those cases where an employer has offered a "legitimate reason unrelated to the exercise of FMLA rights for terminating the employee." (citation omitted)).

Under the *McDonnell Douglas* framework, after a plaintiff has established a *prima facie* FMLA entitlement claim then the burden of proof shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment decision. *See McDonnell Douglas*, 411 U.S. at 802. If a legitimate reason is proffered by the defendant then the burden of proof shifts back to the plaintiff to demonstrate pretext. *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012). A plaintiff can demonstrate pretext by showing that the reason set forth by the employer (1) had no basis in fact; (2) did not actually motivate the action; or (3) was insufficient to warrant the action. *Id.*; *Donald*, 667 F.3d at 762.

In the instant case, it is clear from the record that Plaintiff would have been terminated regardless of his absence on December 17, 2009 to care for his wife, because Defendant's decision maker, Kathy Warner, testified that she would have discharged Plaintiff based solely on the fifth discipline relating to Plaintiff's violation of Defendant's inattention to duty policy. (Warner Aff. at ¶ 7). Indeed, Warner stated that at the time she made her "decision to discharge based upon the two (2) separate March 23, 2010 disciplines, [she] informed MDOC that while [she] had combined them when [she] signed off on the discharge decision, [she] would have discharged for either standing on its own as well." (Warner Aff. at ¶ 7; *see also* Ex. 14, 3/23/10 Email, stating same). Warner further explained that "[t]he decision to discharge was based upon the fact that Mr. Culberson had four (active) disciplines on his record as of March 23, 2010

13

making any new discipline a fifth offense.  Five active disciplines can subject an employee to

discharge under MDOC's polices."  (*Id*. at ¶ 8).  Based on this evidence, whether or not

Plaintiff's December 16, 2009 absence was considered a FMLA absence is beside the point, as it

is clear that Plaintiff was discharged for "legitimate reasons unrelated to the exercise of the

FMLA rights for engaging in the challenged conduct."  *Edgar*, 443 F.3d at 507.

Accordingly, the Court finds that Defendant has established a legitimate reason unrelated

to the use or exercise of FMLA rights that justifies Plaintiff's discharge. Therefore, the burdenn

of proof shifts to Plaintiff to show that the proffered reason has no basis in fact, did not motivate

the termination, or was insufficient to warrant the termination.

To this end, Plaintiff attempts to rebut Defendant's legitimate reason for discharge by

claiming that the fifth discipline, also known as DS-2-51-0038-10, did not actually motivate the

termination because it was merely a "make-weight" added after the sixth discipline regarding

time and attendance.  Rather, Plaintiff contends that the sixth discipline was the "primary

motivation" for the decision to discharge Plaintiff.  (Pl.'s Resp. at 10).  In support of his

argument, Plaintiff notes that the warden recommended a three-day suspension at the conclusion

of the March 4, 2010 disciplinary hearing regarding the fifth discipline and that Plaintiff actually

served that three-day suspension on March 18-10, 2010.  (Ex. 12 at 6; Pl.'s Br., Ex. 7).  Kathy

Warner reviewed Plaintiff's discipline packet on March 23, 2010 after Plaintiff had already

served his suspension.  Warner then "modified" the warden's recommendation for suspension

noting: "This is [employee's] 5th discipline on the record, whereby he continues to demonstrate

deterioration. [Employee] also has a 6th discipline for an unsatisfactory rating (9-11-09 to 3-17-

10).  DS-2-51-0041-10 is combined w/ this discipline.  (Discharge))".  (Ex. 12 at 1).

14

Plaintiff argues that based on the "labor relations arbitration precedent" of "double jeopardy" the Court should find that Warner's modification of the suspension recommendation is suspect and constitutes evidence that the sixth discipline that was the actual motivation for his discharge. (Pl.'s Br. at 12).

Plaintiff's arguments are unavailing. First, Plaintiff's reliance on labor relations arbitration precedent is non-binding on this Court and off the mark. Plaintiff has failed to show that it was outside of Warner's ability to modify Plaintiff's recommended suspension. In fact, it is clear that the three-day suspension was simply a recommendation, as noted on in the discipline packet. (Ex. 12 at 1). Warner also attested that she often rejected the recommendations she received because she disagreed with either the conclusion that a rule infraction occurred or that the recommended discipline was appropriate. (Warner Aff. ¶ 3).

Moreover, Plaintiff fails to address the fact that even if the sixth discipline was truly the motivation for Plaintiff's discharge, the December 17, 2009 absence was not the only infraction alleged in that sixth discipline. In fact, there were seven different occurrences of tardiness and two instances of lost time, as well as two other absences set forth in the sixth discipline. (*See* Ex. 12). Further, the warden had omitted other absences upon receipt of proper documentation from Plaintiff at the related disciplinary hearing. (Ex. 12 at 6). Yet, the omission of those absences did not alter the warden's recommendation of discharge or change Plaintiff's interim rating to satisfactory. (*Id*.). Therefore, it does not stand to reason, given the numerous other infractions included in the sixth discipline, that the omission or inclusion of the December 17, 2009 absence would have changed the recommendation of the warden or the discipline issued by Kathy Warner. The December 17, 2009 absence is but one absence in a long list of offending conduct memorialized in the follow-up interim rating report. Thus, the logic in Plaintiff's argument that

15

the sixth discipline actually motivated his discharge is flawed.

For these reasons, the Court finds that Defendant has proffered a legitimate reason unrelated to Plaintiff's exercise of FMLA rights, Plaintiff has failed to carry his burden of proof and show that the reason was mere pretext, and accordingly, summary judgment is warranted.[7]

B.    FMLA Retaliation Claim

Plaintiff also argues that Defendant retaliated against him for taking or requesting FMLA leave on December 17, 2009.  The FMLA provides that an employer cannot "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."  29 U.S.C. § 2615(a)(2).  Further, an employer cannot "use the taking of FMLA leave as a negative factor in employment actions." *Arban*, 345 F.3d at 403 (citing 29 C.F.R. § 825.220(c)).  To establish such a *prima facie* case, Plaintiff must show: (1) the employee was engaged in an activity protected by the FMLA; (2) the employer knew that the employee was exercising her right under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.  *Donald*, 667 F.3d at 761 (citation omitted).

Generally, where a plaintiff relies upon indirect evidence to establish the causal connection between the protected activity and the discharge, a court must evaluate the claim under the familiar *McDonnell Douglas* burden-shifting framework.  *Edgar*, 443 F.3d at 508.  As explained above, after a plaintiff has established a *prima facie* FMLA claim the burden of proof

---

[7] Because Plaintiff cannot carry his burden of proof and show Defendant's reason for firing him is pretext, the Court does not reach Defendant's alternative argument regarding whether Ms. Culberson's oral surgery would suffice as a "serious health condition" under the FMLA.

16

shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment

decision. *See McDonnell Douglas*, 411 U.S. at 802. If a legitimate reason is proffered by the

employer then the burden of proof shifts back to the plaintiff to demonstrate pretext. *Seeger*, 681

F.3d at 285. A plaintiff can demonstrate pretext by showing that the reason set forth by the

employer (1) had no basis in fact; (2) did not actually motivate the action; or (3) was insufficient

to warrant the action. *Id.*

In the current action, however, Plaintiff argues that the *McDonnell Douglas* framework

does not apply because Plaintiff's retaliation claim is not a single motive claim but rather a

"mixed-motive" retaliation claim (a claim based on "an adverse employment action motivated by

both the employee's use of FMLA leave and also other, permissible factors"). *Hunter v. Valley

View Local Schools*, 579 F.3d 688, 692 (6th Cir. 2009); *see Seeger*, 681 F.3d at 283 (noting that

the *McDonnell Douglas* burden shifting framework applies when a plaintiff sets forth an FMLA

claim "alleging a single motive for discrimination").

In *Hunter*, the Sixth Circuit held that "the FMLA, like Title VII, authorizes claims in

which an employer bases an employment decision on both permissible and impermissible

factors." 579 F.3d at 692. "Under a mixed-motive theory, a plaintiff can prove 'by either direct

or circumstantial evidence that her FMLA [leave] was a motiving factor' in her termination."

*Thomas v. Doan Constr. Co.*, Slip Copy, 2014 WL 1405222, at *9 n. 3 (E.D. Mich. Apr. 11,

2014) (Edmunds, J.) (citing *Wallner v. J.J.B. Hilard, W.L.Lyons, LLC*, 11-00359, 2013 WL

5934145, at *13 (W.D. Ky. Nov. 5, 2013)). "This burden of producing some evidence in support

of a mixed-motive claim is not onerous and should preclude sending the case to the jury only

where the record is devoid of evidence that could reasonably be construed to support the

plaintiff's claim." *Id.* (quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 400 (6th Cir.

17

2008) (modifying the summary judgment standard applicable to Title VII mixed-motive claims in light of the Supreme Court's decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)).[8]

Plaintiff relies on *Hunter* to support his argument that a mixed-motive analysis is appropriate in this action, arguing that Defendant's December 17, 2009 absence was a factor in his discharge.  In *Hunter*, the plaintiff was placed on involuntary leave because of her medical restrictions and also because of "excessive absenteeism".  The charge of excessive absenteeism was based on the review of the plaintiff's entire attendance record and that record was composed primarily of qualifying FMLA absences.  *Hunter*, 579 F.3d at 692.  Utilizing the mixed-motive framework as set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), the Sixth Circuit found that such evidence was direct evidence of an impermissible motive because pursuant to the FMLA, taking FMLA leave cannot be used as a "negative factor" in employment actions. *Hunter*, 579 F.3d at 692-93 (quoting 29 C.F.R. § 825.220(c)).  The burden then shifted to the defendant to show by a preponderance of the evidence that it would have placed the plaintiff on involuntary leave regardless of her use of FMLA leave.  *Id*. at 693.  The defendant was unable to carry this burden because its review of the plaintiff's attendance record, that was comprised of primarily FMLA absences, was in direct contravention of the purpose of the FMLA.  *Id*. at 693-94.  As a result, the Sixth Circuit reversed the district court's grant of summary judgment.[9]  *Id*. at

---

[8] It is still not entirely clear whether the more lenient summary judgment standard espoused in *White* in the Title VII context is applicable to FMLA claims, but the Sixth Circuit's reasoning in *Hunter* foreshadows that it likely will be.  *See Wallner*, 2013 WL 5934145, at *9 (noting the same).  However, this Court need not determine that exact issue with this case, as it is clear that Plaintiff is unable to meet even the lenient "plaintiff-friendly" framework set forth in *White*.

[9] In *Hunter*, the Sixth Circuit did not reach the issue of whether *White's* more lenient framework applied and instead applied the framework set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258 (1989).  *Hunter*, 579 F.3d at 692 n. 2.  The Sixth Circuit noted in *Hunter* that

18

694.

Defendant argues that "an FMLA retaliation claim based solely upon circumstantial evidence of unlawful conduct is evaluated according to the tripartite burden-shifting framework set forth in *McDonnell Douglas*."  (Def.'s Reply at 4).  Defendant's argument, however, fails to appreciate "that the standard applicable to employment discrimination claims 'depends not on the type of evidence presented (direct versus circumstantial), but on the type of claim brought (single-motive versus mixed-motive).'"  *Callaway v. Academy of Flint Charter School*, 904 F. Supp. 2d 657, 664 n. 5 (E.D. Mich. 2012) (quoting *Grubb v. YSK Corp*., 401 F. App'x 104 (6th Cir. 2010) and *Hunter*, 579 F.3d at 692 n. 2).  Here, Plaintiff alleged in his complaint that a "reason for Plaintiff's discharge, among other reasons, was Plaintiff's absence on December 17, 2009 in order to take care of his wife."  (Compl. at ¶ 14).  Therefore, the Court assumes without deciding that *White's* framework is applicable to Plaintiff's mixed-motive retaliation claim under the FMLA.  *Id.*

Under *White*, Plaintiff must prove by circumstantial or direct evidence that his FMLA absence on December 17, 2009 was "a motivating factor" in Defendant's decision to discharge him.  *White*, 533 F.3d at 400.  Indeed, "[t]he only question that a court need ask in determining whether the plaintiff is entitled to submit his claim to a jury in such cases is whether the plaintiff has presented 'sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that" a motivating factor for plaintiff's termination was his use of FMLA leave.  *Id.* at

---

"after *Desert Palace*, we have further modified the summary judgment standard applicable to mixed-motive Title VII claims" but then declined to determine whether that new standard (in *White*) was applicable to FMLA retaliation claims because the plaintiff in *Hunter* was able to survive summary judgment under the more "stringent *Price Waterhouse* burden-shifting standard."  *Id.*

401 (citing *Desert Palace*, 539 U.S. at 101).  If Plaintiff can succeed in producing such evidence

then a genuine issue of material fact would exist such that summary judgment must be denied.

In this action, however, the Court finds that Plaintiff is unable to carry this relatively modest

burden because he cannot show that the December 17, 2009 absence was a motivating cause for

his discharge.

Plaintiff attempts to argue that Defendant's interrogatory response which stated that

Plaintiff's termination was "in part based upon time and attendance issues including absences

without documentation occurring on December 16 and 17, 2009" is dispositive of the issue of

whether Plaintiff's FMLA leave was a motivating (or causative) reason for his discharge.  (*See*

Pl.'s Resp., Ex. 14 at 7).  Yet, the record is clear that Plaintiff had been formally counseled on

numerous occasions over the course of two years for his tardiness, his improper use of sick and

annual leave and his habit of incurring "lost time."  (*See* Exs. 3-14).  Unlike *Hunter*, where the

plaintiff could provide direct evidence of an impermissible motivating factor through deposition

testimony - here, Plaintiff has no direct evidence showing the December 17, 2009 absence was <u>a</u>

<u>motivating</u> cause for his discharge.  Plaintiff himself described the discipline process as

"progressive".  (Pl.'s Dep. at 73).

Moreover, the attendance record at issue in *Hunter* is not analogous to the attendance

record of Plaintiff.  In *Hunter*, the majority of the plaintiff's absences were FMLA related and in

the instant case Plaintiff can only point to one allegedly FMLA qualified absence listed in *one* of

six disciplines (and the sixth discipline itself included seven different tardies, two absences in

addition to December 17, 2009, and one instance of lost time).  Finally, unlike *Hunter*, in which

testimony established that a motivating reason for the plaintiff's discharge was her FMLA

absences, here, there is unrebutted evidence in the record from Defendant's decision maker,

Kathy Warner, that she would have terminated Plaintiff based upon the receipt of the fifth discipline alone.

Critically, Plaintiff has also failed to cite any circumstantial or direct evidence that could lead a reasonable jury to causally connect the December 17, 2009 absence to his discharge. The mere fact one of Plaintiff's numerous absences accrued over the course of two years may have been an FMLA qualified absence does not suggest, *ipso facto*, that he was fired in retaliation for taking one single day of FMLA qualified leave. In fact, it is counterintuitive to think that one of the last absences Plaintiff accrued in his long history of attendance violations could be found to be a motivating reason for his discharge.[10] As explained previously, the record reflects that Defendant removed other absences from the sixth discipline after Plaintiff produced requested documentation or evidence the absence was excused by a superior and yet the follow-up interim rating remained unsatisfactory and discharge was still recommended. (Ex. 13, at 6). This contradicts any argument that any one single absence (or tardy) in Plaintiff's sixth discipline could be construed as "a motivating" cause for his discharge.

Therefore, where Plaintiff has failed to present any credible evidence that his discharge was a motivating factor in his discharge, Plaintiff's FMLA retaliation claim fails.

---

[10] Plaintiff also appears to argue that Defendant was unable to take Plaintiff's entire attendance record into account in deciding to discharge him because such an action was foreclosed by *Hunter*. This argument misconstrues that decision. In *Hunter*, the Sixth Circuit noted that where the employer was evaluating an attendance record that was comprised mostly of FMLA absences, the employer could not use that record "to the extent it reflected her FMLA absences" against her. 579 F.3d at 693 (emphasis added). In this case, the only absence that Plaintiff even attempts to argue is subject to FMLA, is the December 17, 2009 absence. Plaintiff does not dispute that his employment record is replete with other absences, tardies, and disciplines. Therefore, to the extent the Plaintiff's record *did not* reflect any FMLA absences reviewing such a record would not be in contravention of the FMLA. Further, the record reflects that Defendant would have made the decision to discharge Plaintiff regardless of the discipline that contained the December 16, 2009 absence.

21

**IV. CONCLUSION**

For all these reasons, the Court GRANTS Defendant's motion for summary judgment

(Dkt. No. 22) and DISMISSES Plaintiff's Complaint WITH PREJUDICE.

SO ORDERED.


s/Paul D. Borman_____
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  July 30, 2014

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 30, 2014.


s/Deborah Tofil_____
Case Manager

22